IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

                                                      CASE NO.: 8:20-cr-00028-TPB-AAS

v.

ROBINSON CAICEDO GONZALEZ

      Defendant.
_____/

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant, ROBINSON CAICEDO GONZALEZ, through his undersigned counsel, hereby provides his Sentencing Memorandum in support of his anticipated motion for a variance from the advisory United States Sentencing Guidelines.

This Court is guided by the provisions of 18 U.S.C. §3553(a), which adopt a multi-factor approach to imposing a sentence. The factors include "the nature and circumstance of the offense and the history and characteristics of the defendant, "the kinds of sentences available" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(1), (3) & (6), respectively. To be sure, the statute also requires a consideration of "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

1

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." See 18 U.S.C. §3553(a)(2). Referring to these four enumerated purposes, though, the statute expressly cautions that, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the statutory purpose of sentencing" See 18 U.S.C. §3553(a)

I.  The Offense

This case involves a conspiracy to possess with intent to distribute approximately 68 kilos of cocaine.

Following his indictment ROBINSON CAICEDO GONZALEZ admitted to the offense conduct and pled to Count One of the indictment on June 10, 2020.

ROBINSON CAICEDO GONZALEZ falls within criminal history category I, as this case represents his only conviction.

## STATEMENT OF FACTS

1. On January 22, 2020, the government indicted ROBINSON CAICEDO GONZALEZ.

2. ROBINSON CAICEDO GONZALEZ's sentencing hearing is set for October 27, 2020.

3. The only substantive objection to the Presentence Report was the failure of the office of probation to award ROBINSON CAICEDO GONZALEZ a two level reduction for his minor role in the criminal activity.

4. The Presentence Report (PSR) calculates ROBINSON CAICEDO GONZALEZ's total offense at 29 with a criminal history category I.

According to the PSR, ROBINSON CAICEDO GONZALEZ faces an advisory guideline sentencing range of 87 to 108 months of incarceration.

## REQUEST FOR A MITIGATING ROLE ADJUSTMENT PURSUANT TO U.S.S.G. §3B1.2

In the PSR, the United States Probation Officer fails to identify any factors warranting a departure from the guidelines. ROBINSON CAICEDO GONZALEZ, however, submits that he is eligible for a 2-level mitigating role adjustment, pursuant to U.S.S.G. §3B1.2, which provides:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

As one of three (3) persons found on a vessel transporting illegal drugs, ROBINSON CAICEDO GONZALEZ does not represent his participation as minimal. He does, however, believe that his participation qualifies as minor, i.e., characteristic of a defendant "who is less culpable than most other participants in

the criminal activity." §3B1.2 App. N. 5. Probation has defined this conspiracy as the three (3) persons on the boat. However, ROBINSON CAICEDO GONZALEZ suggests that this view is too limited in scope and reality. He respectfully points out that his eligibility for a mitigating role adjustment has been clarified by recent actions of the U.S. Sentencing Commission, in amending §3B1.2.

Since before 2002, when Amendment 640 was issued, amending U.S.S.G. §3B1.2, the Sentencing Commission has expressed concern that "the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. . . . [The] base offense levels derived from the Drug Quantity Table in §2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2." U.S.S.G. Amendment 640. For this reason, the Commission modified the Drug Quantity Table in §2D1.1 "to provide a maximum base offense level of level 30 if the defendant receives an adjustment under §3B1.2," commenting:

> The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).

U.S.S.G. Amendment 640.

The Commission's concerns have clear significance for ROBINSON CAICEDO GONZALEZ. He was a Mariner aboard a drug-smuggling vessel, his role was indisputably limited to that of a "mule" or "courier," with no authority in the drug trafficking organization and consequently a low degree of individual culpability.

### CURRENT STATE OF §3B1.2, AMENDED ON NOV. 1, 2015

Since issuing Amendment 640 in 2002, the Commission has continued to be concerned about the under-application of the mitigating role adjustment. Recently, in a wide-ranging study of low-level offenders, the Commission concluded that the adjustment continues to be applied "inconsistently and more sparingly than the Commission intended." U.S.S.G. Amendment 794 (emphasis supplied). Largely to encourage application of the adjustment to greater numbers of low-level offenders, the Commission issued Amendment 794, effective on November 1, 2015.

The most important change to the guideline under Amendment 794 was the addition of "a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment." U.S.S.G. Amendment 794. All five of the listed factors have specific implications for ROBINSON CAICEDO GONZALEZ:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

5

> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2 App. N. 3(C).

### FACTORS (I) - (IV):
### UNDERSTANDING, PLANNING, AUTHORITY, DISCRETION

The criteria in factors (i) through (iv) focus on the defendant's understanding, planning/organizing function, decision-making authority, responsibility and discretion. ROBINSON CAICEDO GONZALEZ exercised none of these attributes. He was simply one of three Mariners whose presence was necessary for the moving of a vessel over a stretch of ocean. Just one leg in many, the contraband would travel. Obviously, he possessed an understanding of the illegal purpose of the voyage, but he did not know any further details concerning the overall operation—such as the ultimate destination of the cocaine. He was recruited by low-level participants, who dealt with intermediaries within a larger drug trafficking organization. ROBINSON CAICEDO GONZALEZ was not involved in acquiring drugs, organizing the drug smuggling operation, or planning

6

the route of the voyage. He had zero decision-making authority, leadership responsibility, or operational discretion. In short, his role was "perform[ing] a limited function in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to transporting or storing drugs . . . may receive an adjustment under this guideline." Id. (emphasis supplied).

### FACTOR (V): "BENEFIT" FROM THE CRIME

Further determinative of ROBINSON CAICEDO GONZALEZ's minor role is factor (v) added to Application Note 3(C): "the degree to which the defendant stood to benefit from the criminal activity." He was to receive only a cash payment completely unrelated to the large value of the drugs transported. As the guideline states, "A defendant who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

### CONDUCT "INTEGRAL" OR "INDISPENSABLE" TO THE OFFENSE

As noted by the Commission in issuing Amendment 794, defendants historically have been improperly denied mitigating role adjustments because their conduct was "integral" (essential, indispensable) to the offense. In Amendment 794, however, the Commission clarified beyond all doubt that the fact that a defendant's role was essential to the offense "does not alter the requirement . . . that

7

the court must assess the defendant's culpability relative to the average participant in the offense." U.S.S.G. Amendment 794. "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

### DRUG QUANTITY AS A BASIS FOR DENIAL OF ADJUSTMENT

In the past, defendants serving as drug couriers were commonly denied mitigating role adjustments based on the amount of drugs being transported. This analysis, however, was invalidated by Amendment 794, which states that a transporter of drugs—although accountable for the drugs he transported under relevant conduct—"may receive" a mitigating role adjustment. U.S.S.G. Amendment 794 (emphasis supplies). It is further instructive that in the list of factors courts are now directed consider, not one of the five factors refers to drug quantity. U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied). Under the current guidelines, ROBINSON CAICEDO GONZALEZ may not be denied a mitigating role adjustment on the grounds of drug quantity.

### CULPABILITY COMPARED TO THE "AVERAGE PARTICIPANT"

The fundamental requirement for the minor role adjustment is that, "based on the totality of the circumstances," the defendant's role in the offense "makes

8

him substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). According to the Sentencing Commission's Historical Notes to the 2015 Amendments, "average participant" refers narrowly to the defendant's "co-participants in the case at hand." In a conspiracy involving the immediate presence of only mariners, the concept of "average participant" is elusive. Even in these narrow circumstances, however, it is clear that ROBINSON CAICEDO GONZALEZ and his co-Defendants were "substantially less culpable" than other participants. ROBINSON CAICEDO GONZALEZ was not directly connected with the larger drug organization, did not plan or organize the voyage, did not procure the vessel, and did not load the cocaine. In all such activities, ROBINSON CAICEDO GONZALEZ had no say.

The true "average participants" were those who created, organized, and managed a drug-trafficking organization; sourced and obtained thousands of kilograms of cocaine and continue to reap huge profits from the overall enterprise oblivious of the fate of minor, disposable players such as ROBINSON CAICEDO GONZALEZ.

In view of ROBINSON CAICEDO GONZALEZ's minor and subordinate role in the conspiracy, it is clear that ROBINSON CAICEDO GONZALEZ is entitled to a 2-level minor role reduction.

Applying these facts and principles to the guideline analysis, ROBINSON CAICEDO GONZALEZ qualifies for a role reduction in the criminal activity pursuant to U.S.S.G. § 1B1.2 and U.S.S.G. § 3B1.2. Furthermore, a district court may reduce a defendant's base level by two, three or four levels if it finds that the defendant was a "minor and or minimal participant" in the criminal activity. U.S.S.G. § 3B1.2(b). If the court grants such a reduction in this case, ROBINSON CAICEDO GONZALEZ's base offense level is decreased by two levels.

Finally, ROBINSON CAICEDO GONZALEZ moves this Honorable Court for a variance from the otherwise applicable advisory guidleines range based on 1) his personal history and characterisitics; 2) his minor role in the offense; and 3) the need to avoid unwarranted disparities amongst similarly situated defendants.

## MEMORANDUM OF LAW

This memorandum addresses the question of what is the appropriate sentence for ROBINSON CAICEDO GONZALEZ based on his convictions for cocaine distribution. As part of the analysis, this memorandum examines the issue of whether a variance is appropriate pursuant to 18 U.S.C. §3553(a), notwithstanding the calculation of the sentence determined by the advisory guidelines. It concludes that a variance is warranted in ROBINSON CAICEDO GONZALEZ's case pursuant to the factors set forth under §3553(a).

## BOOKER AND ITS PROGENY PROVIDES THE COURT WITH THE DISCRETION OF IMPOSING A SENTENCE LESS, THAT THE ADVISORY GUIDELINES

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. *United States v. Booker*, 543 U.S. 220, 245-67 (2005). Thus, a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81 (1996)). The use of the guidelines in other than an advisory function violates the defendant's Sixth Amendment Rights. *Booker*, 543 U.S. at 244-45 (Part Two, Breyer, J.).

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, §3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors. Id. § 3553(a)(1)-(7). In *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006), the court summarized the factors that must be considered under § 3553(a), including:

>    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>    (2)   the need for the sentence imposed--

11

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established . .

  (5) any pertinent [Sentencing Commission] policy statement

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

## THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Although ROBINSON CAICEDO GONZALEZ recognizes the seriousness of his offenses, he respectfully submits that there are mitigating factors. ROBINSON CAICEDO GONZALEZ's actions in this case are entirely inconsistent with the life he has led. Pursuant to § 3553(a), a consideration of ROBINSON CAICEDO GONZALEZ's sentence should take into account his life history. He is 49 years of age and has no prior criminal history whatsoever. He grew up in impoverished circumstances and has only a 5th grade education.

12

At the time of his birth his parents were separated. His mother raised him until he was 10 years old at which point she "gave him up" to an "acquaintance" who promised to educate ROBINSON CAICEDO GONZALEZ and give him a better life. Instead, his new family put him immediately to work and began to physically abuse him.

ROBINSON CAICEDO GONZALEZ has been in a long term relationship for 23 years with Dora Lilia Viascos. They have one son, Brian, age 19. ROBINSON CAICEDO GONZALEZ had a relationship previously with Patricia Ribas and they have two children together: a daughter, Angela, age 27 and a son, Luis, age 30. ROBINSON CAICEDO GONZALEZ stated he has another daughter, Vanesa, age 16, from a brief relationship with Soledad. (See PSR ¶8)

ROBINSON CAICEDO GONZALEZ is safety value eligible, therefore, a minimum mandatory sentence does not apply. Thus, a sentence below the advisory guideline range is permissible.

## THE KINDS OF SENTENCES AND THE GUIDELINE SENTENCING RANGE ESTABLISHED

The critical question in LUIS RAMON NARVAEZ's case is the exact weight this Court should give to the guidelines. As recognized in *Gall*, district courts "may not presume that the Guideline range is reasonable." 552 U.S. at 49. Thus, mitigating circumstances and substantive policy arguments that were

formerly irrelevant in all, but the most unusual cases, are now potentially relevant in every case.

The guidelines pose a particular risk in ROBINSON CAICEDO GONZALEZ's case for a more elemental reason–they falsely provide a promise of predictability and fairness. Regarding the false promise of the advisory guidelines, one district court aptly noted:

> Criminal behavior can fuel public outcry and drive broad legislative and executive agendas to get "tough on crime." But how does that translate to specific instances? If you take a matrix to factor offense severity, overlay it with mandates born of popular outrage, and tailor it purportedly to address almost every eventuality, you get "justice" dictated in advance, marked by visceral condemnation, and based on the pretense of omniscience.

*United States v. Williams*, 372 F.Supp.2d 1335, 1337-1338 (M.D. Fla. 2005)(Presnell, J.)[1]

Because we believe the guidelines to be the product of great deliberation and reasoned judgment, we often assume that they provide clear direction for the proper sentencing of every criminal defendant, notwithstanding their backgrounds and the particular circumstances of their case.[2] Thus, we depend on the guidelines to relieve us of the burden and uncertainty of having to decide a just sentence for

---

[1] Although *Williams* was reversed by the Eleventh Circuit in *United States v. Williams*, 456 F.3d 1353 (11th Cir. 2006), the Eleventh Circuit's decision was overruled by the United States Supreme Court. *See Kimbrough v. United States*, 552 U.S. 1353 (2007).

[2] Of course, the guidelines do address the background of each defendant and the circumstances of each case in a limited fashion through criminal history and offense conduct.

the particular defendant.[3]  In effect, the guidelines, with their promise of mathematical certainty, provide a court with a sheltering sky against the purported abyss of ambiguity.[4]  But such security is a false god and every time we make a sacrifice to it we are lost.[5]  Indeed, the guideline ranges have often and dramatically failed our system of justice in creating results that are fundamentally unjust. For instance, for years, the guidelines for crack cocaine created a situation where defendants were harshly and unfairly sentenced.

Certainly, ROBINSON CAICEDO GONZALEZ's advisory guideline range in the instant matter cannot account for: (1) his commitment to and compassion for his family and others; (2) the significant collateral consequences of his conviction;  (3) his complete lack of a criminal record; and (4) his extremely low risk of recidivism.  These factors, regardless of the advisory guideline range, support ROBINSON CAICEDO GONZALEZ request for a variance.

---

[3] At its core, the rigid matrix of the sentencing guidelines demonstrates the deeply-rooted human aversion to uncertainty and ambiguity. *See*, *e.g*, Maria Konnikova, *Why We Need Answers*, The New Yorker (Apr. 30, 2013). As Konnika asserts, studies demonstrate that the need to respond to uncertainty or a lack of clarity is present in the early stages of human development. *Id*. Because of our distress with the unknown and uncertain, we seek to achieve "cognitive closure" defined as the "desire for a firm answer to a question and an aversion to ambiguity." *Id*. (citing Dr. Arie Kruglanski, *Motivated Closing of the Mind*, Psych. Rev., at 263-83 (Apr.1996)).

[4] *See* Paul Bowles, *The Sheltering Sky* (Random House 1949)("The sky hides the night behind it and shelters the people beneath from the horror that lies above.")

[5] *See* Bowles, *Sheltering Sky,* ("Security is a false God. Begin to make sacrifices to it and you are lost.").

## CONCLUSION

As the foregoing establishes, the unique circumstances presented in ROBINSON CAICEDO GONZALEZ's case warrant a variance below the applicable guideline range. Because the decision in *Booker* has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, ROBINSON CAICEDO GONZALEZ respectfully submits that a variance is appropriate pursuant to this significant and paramount sentencing statute. Indeed, an advisory guideline sentence is not only antagonistic to § 3553, but also would violate the admonition in *Koon* that any sentencing must consider the individual defendant and the unique circumstances that mitigate his crime and punishment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of September, 2020, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all parties of record.

Respectfully submitted,

/s/ Victor D. Martinez
Victor D. Martinez, Esquire
Florida Bar No. 0444601
Victor D. Martinez, P.A.
1408 North Westshore Blvd., Suite 705
Tampa, FL. 33607
Telephone: (813) 289-0600
Facsimile: (813) 251-0505
Email:vmartinez@tampabay.rr.com